**No. 59729.**—Wah Shang Company *v.* United States, protest 181643–K (San Francisco).

WILSON, Judge: When this case was called for trial, plaintiff abandoned its protest as to all merchandise, except that invoiced as "Fu Kwat" and "Sum Yung," which is represented by plaintiff's exhibits 1 and 2. Plaintiff admitted the correctness of the collector's classification of the latter merchandise under paragraph 24 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by T. D. 51909, with a duty assessment at the rate of 12½ per centum ad valorem and 40 cents per pound as medicinal preparations, containing more than 20 per centum but not more than 50 per centum of alcohol.

The only issue raised by the plaintiff at the trial and argued in its brief is whether the involved merchandise is subject to the imposition of an internal revenue tax of $9 per gallon, which was levied herein under the provisions of section 2800 of the Internal Revenue Code.

In accordance with the request of counsel for the importer and for the Government, an order was entered by the court that the representative samples (plaintiff's exhibits 1 and 2) be submitted to the chemists' laboratory of the Alcohol and Tobacco Tax Unit of the Internal Revenue Tax Department "for analysis to ascertain whether the liquid contained in the two bottles are fit for beverage use; two, whether they contain any drugs in the United States known in the United States for use as medicinal preparations; 3, the contents of the bottle is as best as these chemists can analyze them."

Pursuant to the order of the court, an analysis of the liquids in question was made by the chemistry laboratory, referred to above. The report of the analysis thereafter filed with the clerk of this court reads in part as follows:

The alcoholic content was found to conform approximately to the labels.

The solid material was found to be principally sugar, only 3.02 g/100 ml and 3.65 g/100 ml being solid matter other than sugar.

A test for alkaloids was negative which eliminates a large group of medicinal substances.

An extraction of material from the liquors with a mixture of chloroform and ether was so small, 0.06 g/100 ml and 0.03 g/100 ml, that many medicinal substances are eliminated.

A test for emodin was negative which eliminates a group of medicinal substances having a laxative effect, such as cascara.

The small quantity of ash which was white and fluffy indicates the absence of a material amount of medicinal substances containing metals.

The liquors are alcoholic solutions of plant extractives, containing a large amount of sugar and no drugs of value.

It is concluded that they are fit for beverage use.

The only witness called on the case was Jay Joe Luen who stated:

My occupation is off and on working as a bartender for the last 10 years.

According to his testimony, he had been a bartender in Chinatown in San Francisco "and then another place called Li Po, also on Grant Avenue, and then in the Forbidden City on Sutter Street, and then Lamps of China, also on Grant Avenue." (R. 15–16.) This witness then testified further as follows:

Q. Indicate what beverages you have handled as a bartender.—A. As a bartender, I serve most all the so-called customers drinking American whiskey, gin.

Q. Have you served any Chinese liquors in bars?—A. Only two types. (R. 17.)

He then stated that he had served liquors known as Mui Kwei Lu and Ng Ka Py, but had never served wine.

The witness further testified that he had at times lived in Chinatown in San Francisco and was somewhat familiar with the retail stores up there that handle drugs and groceries. His testimony then continued as follows:

Q. Would you examine Exhibits 1 and 2?

\* \* \* \* \* \* \*

Q. Have you ever seen articles such as those exhibits?—A. Not in the bars.

Q. Have you seen them?—A. Yes.

Q. You have seen them many times?—A. Yes.

Q. Are you able to state which is which? What do you understand Exhibit 1 to be?—A. Fu Kwat.

Q. What is the other exhibit?—A. Sum Yung.

\* \* \* \* \* \* \*

Q. Have you ever tried those articles yourself?—A. Yes, I have.

Q. Why did you try them?—A. This particular brand of so-called tonic is known as good for a certain kind of sickness, either to build up the body, or maybe rheumatism.

Q. Are you referring now to the Fu Kwat?—A. Yes.

Q. What happened when you tried that?—A. That was a number of years ago I did take a jigger of that.

Q. Did it have any effect?—A. It gave me a nose bleed. In other words, it contained so much medicine in it.

Q. Have you tried the Sum Yung?—A. Yes, I tasted it.

Q. Why was that?—A. Just to find out what kind of flavor they are.

\* \* \* \* \* \* \*

JUDGE WILSON: \* \* \*. Have you seen these in stores? .

THE WITNESS: Grocery store, or drug store, where they carry liquors.

The witness further testified that he had never seen either Fu Kwat or Sum Yung sold in Chinese bars or served at Chinese banquets. Neither had he seen them served at private homes, but he did not know why they were not served (R. 21–22).

Plaintiff's witness then testified that a number of years ago items such as exhibits 1 and 2 cost around $6 or $7 a bottle and that Chinese liquor in the same quantities cost $3 or $4 a bottle (R. 25–26). The witness, however, stated that he had no information concerning prices prevailing at the time he testified. He further testified that the liquids, exemplified by exhibits 1 and 2, are used among the Chinese people as tonics (R. 27).

Counsel for the importer in their brief stated as their position that "medicinal preparations such as Fu Kwat and Sum Yung are not beverages, nor are they appropriately used or fit for use as beverages and for this reason they are not classifiable as 'distilled spirits.'" Counsel then contended that, under the revenue code, the term "distilled spirits" does not include medicinal compounds but that it pertains "only to those compounds used as beverages."

On the other hand, the Government contends that there is no evidence to controvert the fact that the merchandise is "composed of distilled spirits," and that "It is immaterial whether the importations were wines, medicinal preparations, or tonics. They are all subject to the internal revenue tax."

Section 2800 (a) (2) of title 26 of the United States Code reads as follows:

## (2)  Products of distillation containing distilled spirits.

All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

Section 2809 (b) (1) of the said code defines distilled spirits as follows:

## (b)  Distilled spirits—(1)  General definition.

Distilled spirits, * * * within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance.

Section 3030 (a) (1) (A) of title 26 of the United States Code provides for the levy of a revenue tax—

Upon all still wines, including vermouth, and all artificial or imitation wines or compounds * * * imported into the United States * * *.

    \*      \*      \*      \*      \*      \*      \*

All such wines containing more than 24 per centum of absolute alcohol by volume shall be classed as distilled spirits and shall pay tax accordingly.

Section 191.9 of Regulations 21 of the Bureau of Internal Revenue, as amended by T. D. 5694, which was in effect on or about the time of importation of the involved merchandise, provides as follows:

Sec. 191.9  Rate of tax on other compounds and preparations.—Compounds and preparations, *other* than those specified in section 191.8 [liqueurs, cordials, etc.], *containing distilled spirits*, which are fit for *beverage purposes*, in customs bonded warehouse or imported into the United States are *subject to internal revenue tax at the rate of $9 per proof gallon*, or wine gallon when below proof, and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon. Compounds and preparations, containing fortified or unfortified wine, but no distilled spirits, which are fit for beverage purposes and which are sold as wine, are subject to internal revenue tax at the rates applicable to wines.  (Secs. 2800 as amended, 3030 as amended, 3176, I. R. C.)  [Italics supplied.]

The trial judge, the writer of this opinion, was not much impressed by the only witness who testified.  His qualifications were somewhat nebulous, and his testimony was not impressive, although not contradicted by other witnesses. Yet, the chemical analysis requested by counsel for both parties clearly indicates that the contents of the bottles marked in evidence as exhibits 1 and 2 "are fit for beverage use."  This confirms the testimony of plaintiff's witness when he stated that he had seen the items exemplified by exhibits 1 and 2 for sale in grocery stores and drug stores "where they carry liquors" (R. 21).

There is no evidence in the case at bar controverting the fact that the merchandise under consideration contains distilled spirits.  Concededly, it has an alcoholic content of from 46 to 48 per centum (R. 9).  Accordingly, it comes within the taxable provisions of the Internal Revenue Code imposed on "all products of distillation, by whatever name known," including wines or compounds, when such products contain "more than 24 per centum of absolute alcohol by volume" (sections 2800 (a) (2) and 3030 (a) (1) (A) of the Internal Revenue Code, *supra*). Plaintiff has further failed to establish that the merchandise in question is unfit for beverage purposes.  On the contrary, the proof shows otherwise.  We are also of opinion that the cases cited by the plaintiff in support of its position are inapplicable in the determination of the present issue.

Based upon the record in this case, we are of opinion that the plaintiff has failed to meet its burden of proof, and we find nothing which would justify us in voiding the internal revenue tax imposed upon the imported products.  The

protest claim pertaining to the merchandise described as "Fu Kwat" and "Sum Yung" is overruled. As to all the merchandise covered by the involved entries, other than the items identified through plaintiff's exhibits 1 and 2 as "Fu Kwat" and "Sum Yung," the protest is dismissed. Judgment will be entered accordingly.